UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. |
| | ) | |
| v. | ) | VIOLATIONS: 18 U.S.C. § 371 |
| | ) | (Conspiracy) |
| RANDY ALFORD, | ) | |
| | ) | UNDER SEAL |
| Defendant. | ) | |
| | ) | |

## INFORMATION

The United States of America hereby charges that:

### Background

At all times material to this Information:

*Relevant Individuals and Entities*

1. From in or around October 2006 until in or around December 2017, defendant RANDY ALFORD ("ALFORD") was a Marine Liaison Officer for the U.S. Navy's Fifth Fleet in Manama, Bahrain.

2. From in or around December 2017 until in or around July 2020, ALFORD was a civilian Transportation Specialist for the U.S. Army at Fort Rucker, Alabama, and planned to return to the U.S. Navy in Bahrain. In or around July 2020, ALFORD returned to his position with the U.S. Navy in Bahrain as a Marine Liaison Officer.

3. ALFORD was at all times a civilian employee of the U.S. military, and was a "public official" within the definition of Title 18, United States Code, Section 201(a)(1). During his employment with the U.S. Navy, port visits and the supervision of ship husbanding services in Bahrain were matters within the scope of ALFORD's official duties.

4. CC-1 was a United States citizen. CC-1 was the Chief Executive Officer and Chief

Operating Officer of Company 1, a multi-national corporation with headquarters in Malta. As of March 2021, Company 1 had operating locations in countries across the globe, including the United Kingdom, United Arab Emirates, Singapore, and the United States.

5. Company 1's primary business was "ship husbanding", which is the coordination, scheduling, and direct and indirect procurement of items and services required by ships when they arrived into port. Company 1 provided ship husbanding services to the U.S. Navy, as well as to other allied navies around the world.

6. CC-2 was a United States citizen and was the Chairman of the Board of Directors for Company 1. CC-2 was CC-1's brother.

## COUNT ONE
## Conspiracy to Commit Bribery
## (18 U.S.C. § 371)

7. The introductory allegations in paragraphs 1 through 6 are re-alleged and incorporated by reference as though fully set forth herein.

8. From in or around 2013 through in or around 2021, out of the jurisdiction of any particular State or district, defendant **RANDY ALFORD** did knowingly and unlawfully conspire, confederate, and agree, with CC-1, CC-2, and others known and unknown to commit an offense against the United States, that is, to, being a public official, directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept anything of value personally and for any other person and entity, in return for being influenced in the performance of an official act; being influenced to commit and aid in committing, and to collude in, and allow, any fraud, and make opportunity for the commission of any fraud, on the United States; and being induced to do and omit to do any act in violation of the official duty of such official and person; that is, ALFORD, a public official, sought and received things of value from Company 1, its officers, directors, and

employees, and CC-1 in order to influence ALFORD's official acts, in violation of 18 U.S.C. § 201(b)(2).

### *Purpose of the Conspiracy*

9. The purpose of the conspiracy was (1) for ALFORD to enrich himself by obtaining things of value from Company 1 and its officers and employees; (2) for Company 1 to obtain ship husbanding business from the U.S. Navy, in order to earn money and enrich Company 1 and its officers and employees; and (3) to conceal the conspiracy.

### *Manner and Means of the Conspiracy*

10. ALFORD and his co-conspirators carried out the conspiracy through the following manner and means, among others:

   a. ALFORD sought and accepted things of value, including cash, from CC-1, CC-2, and Company 1;

   b. ALFORD provided proprietary U.S. Navy information to Company 1 and its officers and employees, and assisted Company 1 in obtaining U.S. Navy ship husbanding contracts;

   c. ALFORD took steps to conceal the conspiracy, including but not limited to the use of "burner phones" to communicate with Company 1.

### *Overt Acts*

11. In furtherance of the conspiracy, and to effect its object and purpose, ALFORD and his co-conspirators committed at least one of the following overt acts, among others, outside the jurisdiction of any particular State or district:

   a. On or about July 11, 2015, ALFORD solicited a bribe from MLS. ALFORD sent an email to CC-2's MLS email account with the subject line "Money". The email

said, "Hello, Hope this e-mail finds you and your family in good health and spirit. Can I please make a loan out to you for $20,000?"

b. In or around August 2015, after this email exchange, ALFORD met CC-1 in the Diplomat Hotel in Manama, Bahrain.  CC-1 gave ALFORD an envelope with $20,000 in cash.  CC-1 told ALFORD to keep up the good work and that he'd be in touch with ALFORD.

c. On or about May 17, 2017, ALFORD solicited bribe payments by sending an email to CC-2, saying, "Hello!  How are you, Frank, and the family.  I wanna talk to you. Please keep in touch."

d. On or about or about May 19, 2017, ALFORD deposited $800 in bribes into an account at Navy Federal Credit Union controlled by ALFORD.

e. On or about September 6, 2017, ALFORD notified the *U.S.S. Thunderbolt* that it would have to change berths at Mina Salman Port in Bahrain.  By requiring the *Thunderbolt* to change berths, the U.S. Navy had to then pay MLS for the use of tugboats.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

1. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of conspiracy to commit an offense against the United States, that is, bribery, in violation of 18 U.S.C. § 371, as alleged in this Information, the defendant shall forfeit to the United States of America all property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy.  The property to be forfeited includes, but is not limited to, a money judgment in the amount of $33,500, as determined by the Court at sentencing.

2.  If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

<div style="text-align: right;">

Respectfully submitted,

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

</div>

By:      /s/
<div style="margin-left: 2em;">
Brian R. Young, Deputy Chief
Justin D. Weitz, Principal Assistant Chief
Michael P. McCarthy, Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue, N.W.
Bond Building, Fourth Floor
Washington, D.C. 20530
(202) 598-8084 (Weitz)
Justin.Weitz@usdoj.gov
(202) 616-3114 (Young)
Brian.Young4@usdoj.gov
(202) 305-3995 (McCarthy)
Michael.McCarthy2@usdoj.gov
</div>