**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO.: 21-cr-379** |
| **RANDY ALFORD,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its undersigned counsel, respectfully submits this memorandum to aid the Court in fashioning an appropriate sentence for the defendant Randy Alford ("the defendant").

The defendant, a former public official, is scheduled to be sentenced on September 28, 2022, for soliciting and receiving a bribe of approximately $33,500 in cash from a U.S. Department of Defense contractor. For the reasons set forth below, and in the government's separate filing, the government respectfully requests that the Court sentence the defendant to a period of imprisonment within the Guidelines range of 12 and 18 months, forfeiture, and a period of three years of supervised release.

### I.    The Defendant's Criminal Conduct

On June 10, 2021, the defendant waived indictment and pleaded guilty to one count of conspiracy to bribery in violation of 18 U.S.C. § 371 in connection with the defendant's solicitation and receipt of a bribe from Frank Rafaraci, who was charged separately and pleaded guilty to bribery of a public official, in violation of 18 U.S.C. § 201(b)(1)(A) and (b)(1)(C) in *United States v. Frank Rafaraci*, 21-cr-610 (D.D.C.).

The facts listed in the Presentence Investigation Report ("PSR") are accurate. For more than 10 years, the defendant worked for the United States Navy as a Marine Liaison Officer in Manama, Bahrain. In this role, the defendant coordinated the positioning of U.S. Navy vessels in port, facilitated port calls, and supervised companies contracted to provide ship husbanding services. Company A was one such contractor.

The defendant came to the government's attention in connection with a criminal fraud investigation involving Company A, a ship husbanding company awarded over $100 million in U.S. Navy contracts in Bahrain between 2013 and 2021. The investigation revealed that the defendant solicited and received cash from Frank Rafaraci ("Rafaraci"), the company's Chief Executive Officer. The government also learned that around the same time that the defendant solicited and received money from Rafaraci, the defendant provided sensitive, non-public information regarding U.S. Navy and U.K. Royal Navy warships to employees of Company A. As described in the Information, Statement of the Offense, and PSR, this was not a one-off incident.

The defendant admitted that between at least 2013 and 2021, he corruptly sought and received things of value from Rafaraci, and in exchange, used his position in the U.S. Navy to benefit Company A. As detailed in the PSR, the defendant took opportunities to assist Company A as they arose, for example, by providing Company A with sensitive, non-public information about ship movements, advocating for positions that advanced Company A's interests, and directing ship movements to steer business to Company A. *See* ECF No. 24 ¶¶ 20-55. In exchange, the defendant admitted that he received at least $33,500 in cash from Rafaraci, much of which the

defendant deposited into his personal bank account account in increments designed to conceal and prolong the conspiracy to commit bribery. *Id.*

## II.   The Defendant's Conduct Warrants a Guidelines Sentence of Incarceration

To determine an appropriate sentence, the Court must first accurately calculate the Defendant's Sentencing Guidelines range, and then consider the various factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

### A.  The Guidelines Calculation

Pursuant to the plea agreement in this matter, the parties have stipulated that the following Guidelines apply:

| | | |
|---|---|---|
| Base Offense Level | U.S.S.G. § 2C1.1(a) | 14 |
| Benefit received between $15,000 and $40,000 | U.S.S.G. § 2C1.1(b)(2) and (b)(1)(C) | 4 |
| | Total Offense Level | 18 |

*See* Plea Agreement, ¶ 4.

In the plea agreement, the government agreed that the defendant should receive a two-point reduction for acceptance of responsibility. The government also believes that the defendant should receive an additional one-point reduction under the Guidelines for providing the Court and the government with timely notice prior to indictment of his intention to enter a guilty plea. Under the Guidelines, therefore, the estimated offense level is 15.

The defendant has zero criminal history points. Accordingly, with an offense level of 15 and a criminal history category I, the sentencing Guidelines range is 18 to 24 months' imprisonment. The U.S. Probation Office concurs with this Guidelines calculation. *See* ECF No. 24 ¶ 134.

For the reasons set forth in the government's sealed filing, the government submits that a two-level reduction in the offense level, from 15 to 13, is appropriate, resulting in a revised

Guidelines range of 12 to 18 months' imprisonment. The government recommends a sentence within this Guidelines range.

### B.  Section § 3553(a) Factors

The Sentencing Guidelines are advisory in nature, *United States v. Booker*, 543 U.S. 220 (2005), and they are only one of the statutory factors that sentencing courts must consider when imposing a sentence. *See* 18 U.S.C. § 3553(a)(4); *United States v. Rita*, 551 U.S. 338 (2007). Under Section 3553(a), the Court must consider other factors to determine the appropriate sentence, including the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense and promote respect for the law; the need for the sentence to afford adequate deterrence; and the need to provide restitution to any victims. 18 U.S.C. § 3553(a).

A district court need not, however, "robotically tick through § 3553(a)'s every subsection," nor must it "explicitly discuss every § 3553(a) factor on the record." *United States v. Johnson*, 445 F.3d 339, 345 (4th Cir. 2006). "This is particularly the case when the district court imposes a sentence within the applicable Guidelines range." *Id.* Indeed, a "universally applicable" principle to sentencing "is that a sentence within the proper advisory Guidelines range is presumptively reasonable." *Id.* at 341 (quotation marks omitted). Here, the Section 3553(a) factors weigh in favor of a Guidelines sentence.

### 1.  The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

The defendant's conduct was serious. While serving in the United States Navy, the defendant solicited a bribe from a defense contractor. He did this to enrich himself, and in doing so, he degraded public trust in government officials and the contracting process. His scheme was not short-lived. He solicited a stream of benefits over several years. He undoubtedly recognized

that his conduct was wrong, but he kept doing it anyway. The defendant's conduct harmed the Navy, which had placed the defendant in a position of trust. It also harmed honest contractors, which were unfairly disadvantaged by the defendant's relationship with Company A.

### 2.  The History and Characteristics of the Defendant

The defendant served the United States nearly his entire his adult life. He enlisted in the U.S. Navy in approximately 1980 and retired in 2000. From 2000 to 2022, the defendant served the United States as a civilian employee, first as a marine liaison officer for the U.S. Navy in Bahrain from 2006 to 2017, then as a transportation specialist for the U.S. Army in Alabama from 2017 to 2020, and then again as a marine liaison officer for the U.S. Navy in Bahrain from 2000 to 2022. The defendant may argue that his otherwise lawful life merits leniency, but it bears emphasis that only those without serious criminal records are eligible for positions like the defendant held, and the U.S. Sentencing Guidelines already account for the defendant's lack of prior criminal history.

The defendant's lengthy service in the military and as a civilian U.S. Navy employee underscores the obvious – that he knew the difference between being an honest public servant and a corrupt one – and he chose to be corrupt. The public places a profound trust in those that serve in the U.S. Navy, as well as an expectation that public officials will honor the critical responsibility they have chosen to assume. Yet while serving in a position dedicated to safeguarding U.S. Navy personnel and resources, the defendant deliberately undermined that mission for personal gain. This was not a one-off criminal episode or temporary lapse in judgment. Over the course of years,

and in multiple ways, the defendant chose to act as if the rules did not apply to him and abused his position of trust in service of his own interests.

### 3. The Need to Promote Respect for the Law and Adequately Deter This Type of Criminal Conduct

While the United States does not believe the defendant presents a risk of re-offense, the sentence should reflect the need to promote general deterrence. Specifically, the Court's sentence should make clear that those who abuse their positions of trust will face serious consequences. "[O]ne of the primary objectives of sentencing [public] officials convicted of bribery is to send a message to other public officials that bribery is a serious crime that carries with it a correspondingly serious punishment." *United States v. Morgan*, 635 F. App'x 423, 450–51 (10th Cir. 2015) (alterations and internal quotation marks omitted).

The defendant had many opportunities to report his misconduct to the appropriate authorities – or he simply could have stopped at any time. Instead, the defendant solicited and accepted cash payments on more than one occasion and took official actions to benefit Company A over the course of multiple years. The sentence in this case should be sufficiently serious to deter public officials from putting self-interest and greed above loyalty to the law. The need for general deterrence is particularly important in cases such as this one, which erode public confidence in our institutions and are notoriously difficult for law enforcement to detect.

In addition to promoting respect for anti-corruption laws and deterring individuals in positions of public trust from engaging in corrupt behavior, strict sentences also serve to protect the public from the ongoing problem presented by procurement fraud and corruption in defense contracting. It sends a message that the job of a government official is one that requires integrity; it is not a job to be sought or accepted with the expectation that it can be used to serve one's own

interests. General deterrence is one of the prescribed goals of every sentencing, but it is a particularly weighty factor in favor of a Guidelines sentence in this case.

### 4.   The Need to Avoid Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably … [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States,* 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533. A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines

sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013).

## III.    Restitution and Forfeiture

Although the provisions of the Mandatory Victim Restitution Act apply in this case, the government has not identified a specific monetary loss attributable to the defendant's conduct. Accordingly, the government is not seeking an order of restitution.

The government is seeking a forfeiture money judgement of $33,500 – the proceeds of the defendant's crime. The government anticipates filing a proposed consent order of forfeiture before sentencing, so that the forfeiture order can be made part of the judgment in this case.

## IV.    Conclusion

For the reasons set forth above, the government submits that a sentence of 12 to 18 months' imprisonment, three years of supervised release, and forfeiture of the proceeds of the crime, is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

Respectfully submitted,

GLENN S. LEON
Chief, Fraud Section
Criminal Division
United States Department of Justice

By:    */s/ Michael P. McCarthy*
Michael P. McCarthy, D.C. Bar #1020231
Lauren Archer, M.D. Bar # 1412160028
Trial Attorneys, Fraud Section
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Bond Building, Fourth Floor
Washington, D.C. 20530
Michael.McCarthy2@usdoj.gov
Lauren.Archer2@usdoj.gov

8

## CERTIFICATE OF SERVICE

On September 21, 2022, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System.

*/s/ Michael P. McCarthy*
Michael P. McCarthy
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice
