**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | |
| **v.** | :   **Cr. No. 21-379 (DLF)** |
| | |
| **RANDY ALFORD,** | : |
| **Defendant.** | : |

_____

### MEMORANDUM IN AID OF SENTENCING FOR RANDY ALFORD

### BACKGROUND

On June 10, 2021, the United States filed a one count information charging Randy Alford with conspiracy to commit bribery. He was released on his personal recognizance and was then residing in Bahrain. He subsequently retired from the U.S. Navy and returned to Florida, where he currently resides. ██████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████ He has remained on his personal recognizance and has been in full compliance with his release conditions.

In light of all of the circumstance of this case as well as Mr. Alford's history and characteristics, and including the variance proposed by the Probation Office ████████

███████████████████████████████████████ Mr. Alford, through counsel, respectfully requests that the Court sentence him to probation with, if the Court determines necessary, a period of home confinement and community service.

## SENTENCING FACTORS

When imposing a sentence, the Court must consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The kinds of sentence and the sentencing range established for [the applicable offense and the applicable category of defendant as set forth in the Sentencing Guidelines];

(5) Any pertinent policy statement [issued by the Sentencing Commission];

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

*See* 18 U.S.C. 3553(a); *United States v. Booker*, 543 U.S. 220, 259 (2005). Considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]."  18 U.S.C. 3553(a) (emphasis added). Several years after *Booker*, the Supreme Court emphasized that the "Court's overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'" *Pepper v. United States*, 562 U.S. 476, 493 (2011) (quoting 18 U.S.C. § 3553(a)), to comply with "the four identified purposes of sentencing:  just punishment, deterrence, protection of the public, and

rehabilitation," *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2).

Congress has further provided that:

[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*.

18 U.S.C. § 3582(a) (emphasis added).

Since *Booker*, the Supreme Court reaffirmed that the Sentencing Guidelines are merely one factor to be considered by district courts when fashioning a reasonable sentence and that the Sentencing Guidelines are not to be weighed more heavily than other sentencing factors. *See Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007).  A sentencing court shall not simply presume that a sentence within the Guideline range is automatically reasonable or that a sentence within the Guideline range is more reasonable than a sentence outside of the Guideline range. *Rita*, 551 U.S. at 338; *Gall*, 552 U.S. at 46. The sentencing court further shall not presume that a sentence outside of the Guidelines range is unreasonable. *Id.*  By considering the Sentencing Guidelines along with all of the factors set forth 18 U.S.C. § 3553(a), "the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." *Rita*, 551 U.S. at 351.

It is critical for sentencing courts to consider all sentencing factors and to not give undue weight to the Sentencing Guidelines because, as the Supreme Court has long emphasized that "'[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" *Gall*, 552

U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)); s*ee also United States v. Faison*, No. GJH-19-27, 2020 U.S. Dist. LEXIS 27643, at \*4-5 (D. Md. Feb. 18, 2020)("But if judges are not careful, a rote application of the Guidelines can turn what is often a life-defining moment for the defendant into a check-the-box, formulaic calculation devoid of the individualized sentencing we strive for.").

Overall, judges are encouraged to resist "anchoring" the sentence on the guideline numbers. "Anchoring is a cognitive bias that describes the human tendency to adjust judgments or assessments higher or lower based on previously disclosed external information - the 'anchor.' Studies demonstrate 'that decisionmakers tend to focus their attention on the anchor value and to adjust insufficiently to account for new information.'" Mark W. Bennett, *Confronting Cognitive "Anchoring Effect" and "Blind Sot" Biases in Federal Sentencing: A Modest Solution for Reforming a Fundamental Flaw*, 104 J. Crim. L. & Criminology 489, 495 (2014) (citations omitted).

> It is important to distinguish the guidelines' intended, salutary effect - promoting consistency and proportionality in sentencing - from the unintended anchoring effect that the guidelines can exert. … Anchoring leads to cognitive error not insofar as judges intentionally use the guidelines in an advisory fashion, but instead when judges irrationally assign too much weight to the guidelines range, just because it offers some initial numbers.

*Id.* at 524 (inner quotation marks and citation omitted); *see also United States v. Docampo*, 573 F.3d 1091, 1105 n.5 (11th Cir. 2009) (Barkett, J., concurring and dissenting) ("Not only have district courts now become used to relying on [the Guidelines], but the Guidelines inevitably have a considerable anchoring effect on a district court's analysis").  Nevertheless, as the statute provides, the sentencing guidelines are one of the factors that the Court must consider.

**(1) The United States Sentencing Guidelines.**

Mr. Alford, the government and the Probation Office are in agreement as to what provisions of the guidelines apply and the ultimate guideline range. The parties agree and the pre-sentence report reflects, a base offense level of 14 with an increase of 4 levels for a bribery amount of $33,500 and a three level reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1 for an adjusted offense level of 15. Also undisputed is that Mr. Alford has no prior arrests or convictions and is thus in a criminal history category 1.

[redacted]

[redacted]

[redacted]





In light of the variance suggested by the probation office ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ a sentence of probation with home confinement would be sufficient to satisfy the statutory purposes of sentencing.

**(2)      The Nature and Circumstances of the Offense.**

Mr. Alford does not dispute the seriousness of the offense and he makes no excuses for his criminal actions. However, it is important to look at the facts as the government agreed in Mr. Rafarci's statement of offense. When Mr. Alford debriefed he explained that he had a long-term relationship with Rafarci, had been offered a job with him, and understood that Rafarci wanted to keep that relationship going. That is what the government agreed was a large reason for the money that was exchanged. He also told the government that he offered to take the money and pay it back, which is again consistent with what the government's statement of offense indicates

in Mr. Rafarci's statement of offense. Mr. Alford acknowledged that he did not pay the money

back and did not treat it as a loan. He also acknowledged that he did treat Mr. Rafaraci's

company more favorably at least in part because of the money they paid him. He has been fully

forthcoming about what he and his coconspirators did. ███████████████████████

████████████████████████. He has also begun to demonstrate his rehabilitation by

complying with his release conditions in this case and by refraining from any further criminal

behavior and by becoming a productive member of society as described further below.

**(3)      The History and Characteristics of the Defendant.**

Mr. Alford  is a 60 year old man with no prior criminal history. He not only has no

convictions, but has never been arrested before this incident. He was honorably discharged from

the U.S. Navy and is now retired. He is married and the father of several children. He and his

wife reside in Florida where much of his extended family also resides. At the time of this

offense, he was living in Bahrain, but he lost his job because of this conviction. He is thus

currently unemployed and living on his retirement.

Mr. Alford was raised by relatives in Florida. His father died when he was just 10 years

old and his mother had several children and could not care for all of them. He left home and

joined the U.S. Navy at a young age. He married his wife while in the Navy and they have two

children together. His youngest recently graduated from college and is living with them in

Florida presently. His wife has described him as hard working and a good provider and father.

She remains very supportive of him and recognizes, as he does, that he should not have solicited

or accepted money in his position.  He is embarrassed by his own behavior and is very

remorseful.

As noted, he has honorably served this country for decades. He joined the U.S. Navy in 1980 and retired from the Navy in 2000. He was awarded multiple citations and awards. He remained as a civilian worker in Bahrain. This conviction has been costly for him as he lost his job in Bahrain and had to relocate to a small, sparsely furnished apartment in Florida. He will also have a monetary judgement in excess of $30,000. Because of this money judgement (there is no restitution) he cannot afford anything more than a modest fine.

Mr. Alford also has significant medical issues, suffering from stage 5 chronic kidney disease, glaucoma, high blood pressure, and cardiac disease. He is in chronic renal failure and his medical needs can be better handled in the community than in the BOP.

**(4)     The Purposes of Sentencing.**

A sentence that does not involve a period of incarceration would be sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct.  Mr. Alford's prosecution for this offense has had a tremendous impact on him, allowing him to recognize the damage that he has done.  He has lost his job, has had to relocate, and now has a felony conviction.

No period of incarceration is necessary to protect the public from further crimes of Mr. Alford --  there will be no further crimes.  The effect that this case has had on his life absent any period of incarceration is sufficient to ensure that he will never commit another offense. Moreover, as the United States Sentencing Commission has recognized, defendants in Criminal History Category I are unlikely to recidivate.  See United States Sentencing Commission, *Recidivism and the First Offender, A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate* (May 2004).

Nor is a sentence of incarceration necessary to deter others.  Mr. Alford has and will continue to be punished for his conduct.  To the extent that would-be criminals are deterred by the sentences of others, Mr. Alford's damaged reputation, along with the negative effects on his ability to maintain employment  would significantly deter any similarly situated individuals.

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, increases in severity of punishments do not yield significant (if any) marginal deterrent effects. Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence. Id.; see also Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity".).  Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University.  See Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF.  The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries.  Id. at 1.  It examined the effects of changes to both the certainty and severity of punishment.  Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." Id. at 2.  The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects."  Id. at 1.  Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of

imprisonment.  See David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995); *see* *also* *Gabbay*, *supra*, at 448-49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders.").

Further, shorter sentences have an adequate deterrent effect in white collar or business crime cases.  It is well established that for white collar defendants relatively short jail sentences can have a significant specific and general deterrence value.  *See  United States v. Adelson*, 441 F. Supp.506, 514 (S.D.N.Y. 2006)(in a securities fraud case where the loss amount would have resulted in a lifetime sentence, court sentenced defendant to 42 months in part because "there is considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective white collar offenders.")  In *Adelson*, the Court cited a number of studies demonstrating the deterrent effect of even short prison sentences on business crime defendants, including Richard Frase, Punishment Purposes, 58 Stanford L.Rev. 67, 80 (2005) and Elizabeth Szockyj, Imprisoning White Collar Criminals, 23S. Ill U.L.J. 485, 492 (1998).  The *Adelson* Court also noted that the government did not present any evidence or cite to any studies indicating that a sentence of more than three- and- a -half years was necessary to achieve the retributive and general deterrence objectives applicable to a case like this one.  And "necessary is the operative word, for section 3553(a) expressly dictates that [t]he court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of the subsection." *Adelson*, 441 F. Supp. at 514-515.

The Sentencing Reform Act requires the Court to impose a sentence that not only will reflect the seriousness of the offense and promote respect for the law, but also will provide just punishment, afford deterrence to criminal conduct, and protect the public

from further crimes of the defendant.  Here, the Court can fully achieve these sentencing

goals by imposing a non-custodial sentence that couples home detention with community

service rather than imposing a term of incarceration ███████████████████

████████████████████

      As noted above, Mr. Alford has no criminal history and he is 60 years old. The

United States Sentencing Commission has identified increased age as a powerful

predictor of reduced recidivism.  U.S.S.C., *A Comparison of the Federal Sentencing*

*Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor*

*Score* (Jan. 4, 2005), at 13-15, *available at*

http://www.ussc.gov/sites/default/files/pdf/research-and-

publications/researchpublications/2005/20050104_Recidivism_Salient_Factor_Compu

tation.pdf.  The Sentencing Commission has reported that "[r]ecidivism rates decline

relatively consistently as age increase."  U.S.S.C., *Measuring Recidivism: The*

*Criminal History Computation of the Federal Sentencing Guidelines* (May 2004), at

12 & Ex. 9, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-

publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf.

The same study, and others, find employment, strong family ties, no criminal history,

and a lack of substance abuse problems all lead to a much lower risk of recidivism.

Mr. Alford has all of these factors working in his favor.

      **(5)**    **The Kinds of Sentences Available.**

      Here, rather than imposing a period of incarceration, the Court could substitute

significant conditions of probation, such as home confinement with electronic monitoring.  A

sentence of probation itself is a "substantial restriction of freedom." *Gall*, 128 S.Ct. at 595

(citation omitted).  As the Supreme Court has explained:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.  Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.  *See United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled" (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))).  Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG 5B1.3.  Most probationers are also subject to individual special conditions imposed by the court.

> *Id*. at 595-96 (footnote omitted).

This Court may consider the costs of incarceration and weigh that against the necessity

for it and other alternatives available to the Court.  *See e.g., United States v. Moreland*, 366 F.

Supp.2d 416, 422 (S.D.W.Va., 2005); *United States v. Angelos*, 345 F. Supp.2d 1227 (D. Utah

2004); *United States v. Chavez*, 230 F.3d 1089, 1092 (8th Cir. 2000 (Bright, J., concurring); and

*United States v. Hughes*, 825 F. Supp. 866, 868 (D. Minn. 1993).

This Court may also consider the United States Sentencing Commission's Report entitled

Alternative Sentencing in the Federal Criminal Justice System, whereby the Commission states

that affective alternative sanctions are important options for the federal criminal justice system.

The Report also states that "for the appropriate offender, alternatives to incarceration can provide

a substitute for costly incarceration."  See Alternative Sentencing in the Federal Criminal Justice

System, January 2009, pg. 20.  Mr. Alford is the "appropriate offender" to which the

Commission refers.

**6)      The Need to Avoid Unwarranted Sentence Disparities.**

Not all disparities in sentencing are prohibited -- only *unwarranted* disparities.  *See* 18

U.S.C.  3553(a)(6).  Here, a consideration of the 3553 factors demonstrates that in this case a

sentence below the range is appropriate.  That in other similar cases the 3553 factors may not

support a sentence below the range does not support a within range sentence here.  No

unwarranted disparity would result from a sentence below the applicable range here, because the

3553 factors ████████████████████████████████

In looking at the sentences in similar circumstances using the Sentencing Commission's

Individual Offender Datafiles[1], and filtering for Chapter 2C1.1 with an adjusted offense level of

15, criminal history category I, we found 81 cases nationwide between 2017 and 2021.  It

appears that of those 81 cases, just half (42) received a prison only sentence which is what the

government is requesting here. One received only a fine, 9 received a split sentence of prison and

community confinement, and 29 received probation with just under half of those cases receiving

home detention. Of the 15 cases that received probation only, 10 were associated with a 5K1.1

motion. This demonstrates that the government's request, ████████████████████

█████ would result in sentencing disparity not uniformity. On the other hand, the defense

request would result in a sentence that is sufficient but not greater than necessary and would not

result in sentencing disparity.

---

[1] The data used for these analyses was extracted from the U.S. Sentencing Commission's "Individual Offender Datafiles" spanning fiscal years [SRC's "ExcelFY17to21" is 2017 to 2021]. The Commission's "Individual Offender Datafiles" are publicly available for download on its website. U.S. Sent'g Comm'n, Commission Datafiles, https://www.ussc.gov/research/datafiles/commission-datafiles.

**Conclusion**

For all of these reasons, and for any other reasons set forth at the sentencing hearing, a sentence of probation would be sufficient but not greater than necessary to meet the factors under 18 U.S.C. § 3553(a).

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Michelle Peterson
Chief Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500
Shelli_Peterson@fd.org